UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>      Plaintiff,<br><br>              v.<br><br>JDM WASHINGTON STREET LLC, SWING STAGING LLC, LINK RENOVATION, INC., CARDELLA TRUCKING CO., INC., PHOENIX SUTTON STR. INC., THE PACE COMPANIES NEW YORK, INC., AMERICAN PIPE & TANK LINING CO., INC., ADVANTAGE WHOLESALE SUPPLY LLC, ABC COMPANIES 1–100 (fictitious entities), & JOHN DOES 1–100 (fictitious persons),<br><br>      Defendants. | Civil Action No. 1:25-cv-01728-LJL |

## <u>ORDER APPOINTING RECEIVER</u>

**WHEREAS** this matter has come before this Court upon the filing of a Complaint by

Plaintiff Federal National Mortgage Association (the "<u>Plaintiff</u>" or "<u>Fannie Mae</u>") to foreclose a

certain mortgage (as more particularly defined in the Complaint, the "<u>Mortgage</u>") encumbering

the ground lease estate ("<u>Ground Lease Estate</u>") on property located at 90 Washington Street, New

York, New York (the "<u>Property</u>" or "<u>90 Washington</u>"), and Motion to Appoint a Receiver brought

by Order to Show Cause on February 28, 2025; and

**WHEREAS** the Court finds that based on the record in these proceedings, including

Plaintiff's Order to Show Cause, Motion to Appoint a Receiver, and supporting papers, the

Complaint, the Defendants' oppositions and Plaintiff's reply, the appointment of a custodial receiver in this action over the Property is necessary and appropriate for the protection of Plaintiff.

**IT IS HEREBY ORDERED** that:

1.      **Appointment of Receiver**. Trigild, acting by and through its employees including David Wallace, Chris Neilson, and Ian Lagowitz, who is not a party, attorney, or other person interested in this action, and is otherwise qualified to serve as receiver under applicable law, is appointed receiver (the "Receiver") of the Receivership Estate (as defined below) for all purposes with all of the powers and obligations set forth herein.

2.      **Bond of Receiver**. The Receiver shall file with the Clerk of this Court a cash deposit or bond in the penal amount of amount of $50,000.00 (the "Bond"), on the Receiver's pledge in writing that the Receiver will discharge the duties of Receiver in this action and obey the orders of this Court. The filing of Receiver's Bond with this Court shall take place within ten (10) business days after the entry of this Order. The cost of the Receiver's Bond and any renewals or extensions shall not be an expense of the Receivership Estate (defined below) paid from Property funds. The Bond shall be maintained in full force and effect during the course of the Receivership and continue until the Receiver files and obtains court approval for his final account and report, the expiration of any time periods to appeal the approval, or the resolution in favor of the Receiver of the appeal if one is filed. Upon filing the Bond and oath (which may be in the form of a declaration pursuant to 28 U.S.C. § 1746), the Receiver shall be vested with all the powers and responsibilities of a receiver as provided by law and as specifically set forth herein; provided, however, that the Receiver shall not be deemed to have commenced its responsibilities as receiver hereunder, including possession of the Receivership Estate (as defined below), until the Receiver has delivered a written notice by email to counsel for the Parties declaring the date and time at

which the Receiver's oversight and control of the JDM Washington Street LLC ("JDM Washington" or "Borrower") and possession of the Receivership Estate will begin (the "Commencement Notice"). Promptly following the delivery of the Commencement Notice, the Receiver is authorized, in coordination with the Existing Manager or manager of 90 Washington ("Existing Manager"),[1] to notify the residents of the Property of the appointment of the Receiver.

3.      **The Receivership Estate**. The Court shall have jurisdiction over the Receiver and over all tangible and intangible assets of the Borrower (collectively, the "Receivership Estate"), and all tangible and intangible assets used by the Borrower, including all real and personal property owned, leased or otherwise in the possession of JDM Washington including the Property, and all offices owned, leased or occupied by the Borrower, to the extent JDM Washington has rights thereunder (together with the Property, the "Receivership Property"), all Rents, funds, bank accounts, litigation claims, accounts receivable, computers, software, all media on which information is stored electronically, vehicles, equipment, inventory, furniture, furnishings, licenses, permits, books, records, and documents, but excluding any "Privileged Communications" as defined in paragraph 6(b).

4.      **Borrower's Existing Property Manager**. The existing property manager, Residential Management Group, LLC d/b/a Douglas Elliman Property Management and formerly known as Insignia Residential Group, Inc. ("Existing Manager") shall remain as property manager and shall, pursuant to Section 5(b) of this Order, promptly enter into a management agreement with the Receiver on terms agreed to by the Existing Manager, Receiver and Fannie Mae, until such property manager  is no longer engaged by the Receiver or the Property is no longer owned

---

[1] The Property is currently managed by Residential Management Group, LLC d/b/a Douglas Elliman Property Management and formerly known as Insignia Residential Group, Inc.

by the Borrower. The Receiver or the Receiver's representative shall timely notify Fannie Mae and the designated representative of JDM Washington and the Existing Manager as to material developments concerning the Receivership Estate and shall timely cause to be provided any documents or information reasonably required by the designated representative of the Existing Manager upon written request.

5.    **Receiver's Powers and Duties**. Immediately upon the later of the filing of the Receiver's oath and bond and delivery of the Commencement Notice, the Receiver shall, without further order of this Court unless specified, immediately have the following powers and legal responsibilities as set forth under the Mortgage, including:

a.    **The Receivership Estate**. The Receiver shall take physical custody and possession of the Receivership Estate subject to the terms of this Order. Notwithstanding the foregoing, the Receiver shall not exclude the Existing Manager, or any related parties from being physically present at the Property unless and until the Receiver has obtained, with respect to the Property, an alternate property manager to take manage the Property, in which case the Receiver shall replace the Existing Manager, subject to the terms of this Order. Borrower and Existing Manager agree to cooperate with the Receiver and Fannie Mae to achieve the mutual goals of a prompt, consensual transfer of the Property, while minimizing the impact of the receivership on the management and operation of the Property and its residents to maintain continuity of care for the residents of the Property.

b.    **Authorization to Enter New Agreements**. Promptly following the entry of this Order, to ensure sufficient revenue is made available for the operation and management of the Property, and to protect continuity of care for residents, the

4

Receiver is authorized to enter into a new property management agreement in form and substance satisfactory to Fannie Mae (the "New Management Agreement") to provide property management services for the Property for and on behalf of the Receiver. Concurrently with the entry into the New Management Agreement, Receiver will direct Existing Manager to terminate the existing management agreement with Borrower.

c.    **Management of Property and Operations**. The Receiver, by and through the Borrower is authorized, empowered, and directed to direct and cause the Existing Manager to: (1) continue to manage all of the ordinary-course operations of the Property, subject to and consistent with the terms and conditions of the New Management Agreement; and (2) in accordance with the New Management Agreement and the Loan Documents, regularly provide to the Receiver updates and reports relating to management or operation of the Property, and the Receiver shall provide to the designated representatives of the Existing Manager any and all documents or information relating to the management or operation of the Property not contained in such regular updates or reports, in each case, within three (3) business days following written request. For purposes hereof, any action or expenditure by Existing Manager contemplated by a line item in the Budget (subject to any Variances) (as such capitalized terms are herein defined) shall be deemed to be in the ordinary course of business. The Receiver, by and through each of the Defendants, is authorized and empowered to direct the Existing Manager to carry out any of the foregoing or any other action provided for under the New Management Agreement. The Receiver is hereby authorized to enter into new or amended agreements with the Borrower and the

Existing Manager to ensure sufficient revenue is made available for the operation and management of the Property and/or to protect continuity of care for Property residents.

     d.     **Keys**. The Receiver shall have non-exclusive access to all keys, lock combinations, access cards and other means to access locked areas relating to the Receivership Property, including all lockboxes and locked drawers and cabinets, except for keys and access cards in the possession of residents of the Property. The Receiver is authorized to make copies of such keys, access cards, and other means to access locked areas relating to the Receivership Property for his use in the administration of the Receivership Estate.

     e.     **Books and Records**. The Receiver shall have non-exclusive access to all non-Privileged Communications in the books and records of JDM Washington related to the management and operation of the Property, whether in hard copy or electronic form, including all financial records, tax returns, and any and all documents under the control of, or prepared by any third party on behalf of JDM Washington (the "Books and Records"). The Receiver is authorized to make copies of such non-Privileged Communications in the Books and Records for his use in the administration of the Receivership Estate.

     f.     **Bank Accounts**. The Receiver, in its sole discretion and after consultation with the applicable Existing Manager may continue to use the existing bank accounts of JDM Washington and Existing Manager (the "Existing Accounts") or, at its discretion, may open one or more new bank accounts (each, a "Receiver Account") to be held and operated under the Receiver's control except as may be prohibited by applicable laws; provided, however, that Existing Manager, the Receiver, and JDM

Washington shall require the continued deposit of all of JDM Washington's gross revenues into such accounts. Existing Manager shall have access to any Receiver Account, subject to the terms of this Order. The Borrower and their agents and employees shall provide the Receiver with all information necessary for the Receiver to take control of each of JDM Washington's bank accounts and to open and maintain the Receiver Account, including all login information necessary to access JDM Washington's bank accounts through the website(s) of the bank(s) where such accounts are maintained. The Receiver and Existing Manager (acting in the ordinary course of business or otherwise only upon instruction of the Receiver), shall be the sole signatories on all JDM Washington's bank accounts.

g.      **Revenues**. The Receiver shall monitor cash management processes, including processing of payments and the preparation of financial reports. The Existing Manager in collaboration with the Receiver, are authorized to demand, collect, and receive all accounts receivable, monies, funds and payments related to the operations of the Property, and shall ensure that all such amounts are received, collected, and recorded. All monies coming into the possession of the Receiver and not reserved or expended for any purposes authorized hereunder shall be deposited in a Receiver Account.

h.      **Budget**. Within 30 days of this Order, Receiver shall submit a budget for operations of the receivership for the first one hundred and twenty (120) days of the receivership (unless a different period is agreed to by the Receiver, Fannie Mae, and the Existing Manager). The Receiver shall cause to be paid, on behalf of the Receivership Estate, all expenses necessary to operate the Property, not to exceed the

7

amounts permitted by the Budget and any Variances (as defined below). To the extent cash flow from the Property is insufficient to pay such expenses, without further order of this Court, the Receiver is authorized, on behalf of the Receivership Estate, to request funds from Fannie Mae pursuant to Section 5(i) of this Order as necessary to pay such amounts. Existing Manager and the Receiver shall be permitted to exceed the amounts set forth in the Budget to pay categories of expenses listed in the Budget to the extent that such payments would not cause the aggregate expenditures to exceed either (the following constituting "Variances") 110% of the total budgeted expenses for that same period or 120% of the amount budgeted for that same line item for that same period (each comparison period, a "Measuring Period") and provided further, however, that if the Receiver, in the exercise of his business judgment, determines that he must make expenditures in excess of the amounts as permitted by the Budget for purposes of resident life, health, or safety, the Receiver is authorized to do so and shall immediately notify Fannie Mae and JDM Washington. Following the entry of the Receivership Order, Existing Manager shall deliver to Fannie Mae and the Receiver on or before the 25th day of each calendar month at a minimum (i) a budget-to-actual report comparing actual receipts and disbursements to the amounts budgeted in the preceding month and (ii) occupancy statistics.

i.      **Payment of Expenses and Use of Checks**. Subject to sufficient funds being made available, the Existing Manager shall pay the normal, ordinary, and necessary operating expenses of the Property, in accordance with the Budget and subject to any Variances (except as otherwise expressly provided in this Order), from and to the extent of the rents and other revenues collected from the Premises. The Receiver shall pay any

and all operating expenses of the Property that are administrative expenses of the Receivership Estate. The Receiver is also authorized to employ and pay the Existing Manager, property managers, property operators, accountants, and other persons and professionals as the Receiver deems appropriate to perform his and their duties without further order of this Court. Neither the Receivership Estate, the Receiver nor Fannie Mae shall be liable for any expense with regard to the Property that is incurred prior to the date of the Commencement Notice; provided, however, that the Existing Manager shall be entitled to pay, in the ordinary course of business, amounts accrued pre-receivership that include amounts which are within the normal billing cycles and as otherwise expressly set forth in the Budget. The Existing Manager and the Receiver are authorized to write checks and expend funds for the purpose of making any payments or distributions required or permitted to be made hereunder, including but not limited to expenses incurred in connection with the operation, preservation and maintenance of the Receivership Estate, bank service charges, insurance, accounting and other professional services, postage costs and courier and other delivery costs, inventory, office expenses, rent, security deposits, repairs, supplies, taxes, utilities, wages, and renewals of the Receiver's bond. For the avoidance of doubt, the Existing Manager shall write checks and expend funds to pay liabilities incurred in the ordinary-course operations of the Property subject to the Budget and any Variances, availability of cash flow, and obligations imposed by federal, state or local statutes or regulations, or imposed by regulatory authorities, or, to the extent practical under the circumstances, only with the permission of the Receiver, except for emergencies resulting in life, health, or safety issues. The Receiver must provide 48 hours' notice to Fannie Mae and

JDM Washington prior to spending more than fifty thousand dollars ($50,000) for items outside the ordinary course of business.

j.    **Insurance**. Within three business days following the entry of this Order, JDM Washington shall promptly:

  i.    provide the Receiver with copies of all existing insurance policies for the Property, the assets of the Receivership estate, or maintained by Defendants for or with respect to the Property. The Receiver, the retained professional property manager, FHFA, and the Plaintiff shall each be named as an additional insured or as mortgagee, as their interest may appear on all existing coverages, including property damage, and general liability policies for the Property (collectively referred to as "Insurance on Property"). The premiums for insurance policies and deductibles for Insurance on Property that become due shall be expenses of the Receivership Estate. The Receiver shall have the right to possess and control all right, title, and interest of Defendants or the insured in and to all proceeds from any claims made or to be made under any insurance policy maintained by Defendants, the Receiver, or any other party with respect to the Property of the Receivership estate. Except as restricted by this paragraph below, the Receiver shall have the right to modify, amend, or replace any Insurance on the Property or obtain additional insurance as the Receiver deems reasonably necessary to protect the Property. No existing insurer may cancel its existing policy as a result of the appointment of the Receiver r without consent from the Plaintiff and/or FHFA. The Defendants may not amend, modify, or cancel any existing insurance policy without the written consent of the Receiver, Plaintiff and/or FHFA. Furthermore, the Receiver is required to obtain written consent from the Plaintiff prior to any such amendment, modification or cancellation of any existing insurance policy.

  ii.    Separate from Insurance on Property as set forth in the paragraph above, the Receiver shall, at its sole cost and expense, obtain and carry in full force and effect for Receiver and its employees (collectively "Receiver") insurance coverages for (1) professional liability/errors and omissions and, (2) fidelity/crime. Such professional liability/errors and omissions coverage will have a minimum per claim coverage amount of $5 million and fidelity/crime coverage will have a minimum per claim coverage amount equal to the greater of $1 million per claim or four months of revenue using the agreed budget for the property (collectively these coverages are referred to as "Receiver's Business Insurance").

  iii.    The Receiver's retained professional property manager ("Property Manager") shall carry the following insurance coverages: (1) excess/umbrella coverage in the minimum amount of $5 million per claim

above primary policy limits or a greater amount as required by Fannie Mae; (2) dishonesty, identity theft, fidelity, cyber (first party and third-party including identity theft resolution and loss control services), general liability coverage (separate from the Insurance on Property as set forth in the paragraph above), business automobile liability, and employer's liability, with each such coverage having a minimum coverage amount of $1 million per occurrence and $2 million in the aggregate; and (3) worker's compensation with a minimum per claim coverage amount in accordance with state laws. All such Property Manager coverages are collectively referred to as "Property Management Insurance." The Receiver shall be added as an "additional named insured" to Property Management Insurance upon hiring or retention of the Property Manager.    To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverages in the same amounts as the required Property Management Insurance. Fannie Mae and FHFA shall be named as additional insureds on the Receiver's Business Insurance and the Property Management Insurance. For the avoidance of doubt, the Receiver, the Property Manager and their employees, as well as any of their agents, attorneys or contractors shall always keep in force the minimum amounts of coverage as set forth in this paragraph for Receiver's Insurance and Property Management Insurance, including applicable tail coverage. Each insurance carrier providing Receiver's Business Insurance and Property Management Insurance, whether admitted or non-admitted, must comply with a minimum (1) A. M. Best Financial Strength Rating of A- and (2) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than $25,000. The premiums for insurance policies and deductibles for all Receiver Business Insurance and Property Management Insurance shall not be expenses of the Receivership estate. The Receiver and the Property Manager will, upon appointment, provide certificates to Fannie Mae evidencing insurance coverages, and thereafter, upon Fannie Mae's request. The Receiver and the Property Manager will promptly notify Fannie Mae of any material change in insurance coverages.

k.    **Debt**. The Parties acknowledge that the Property, including façade work cited in the Tenant Default Notice dated August 24, 2018, from the ground lessor to Borrower (the "Tenant Default Notice"), may operate during this receivership, at a cash-flow deficit. Without further order of this Court, the Receiver is authorized, on behalf of the Receivership Estate to borrow funds from Fannie Mae or, at Fannie Mae direction to The Bank of New York Mellon, as Bond Trustee ("Bond Trustee") under the New York City Housing Development Corporation Multi-Family Rental Housing

Revenue Bonds (90 Washington Street) Bond Resolution adopted by New York City Housing Development Corporation on January 21, 2005 ("Bond Resolution"), from funds on deposit in the Principal Reserve Fund held under the Bond Resolution, as necessary to perform her duties hereunder (including payment of amounts required to operate the Property under the New Management Agreement, and to undertake façade work cited in the Tenant Default Notice and to otherwise ensure sufficient funds to otherwise meet any and all obligations or requirements imposed by regulatory authorities (including legal counsel fees). The Receiver is authorized to issue one or more Receiver's certificates of indebtedness ("Certificates") to evidence such debt, and is authorized to execute such other documents as requested by Fannie Mae evidencing the advance of such funds (the "Lending Documents"). Any such funds advanced by Fannie Mae or released from the Principal Reserve Fund held under the Bond Resolution at Fannie Mae's direction and evidenced by the issuance of Certificates, shall be considered advances made under the Lending Documents between the Receiver and Fannie Mae and shall be included in the Indebtedness evidenced by the Loan Documents. The obligations under each Certificate shall be a super-priority administrative claim against the Receivership Estate, and shall be secured by a perfected first priority security interest in and lien on all of JDM Washington's property, including all of the JDM Washington's existing and future acquired property interests of any nature whatsoever (including assets of the Receivership Estate), real and personal, tangible and intangible, including owned and leased real property, any other interests in real property, accounts receivable, inventory, equipment, cash, deposit accounts, investment property, general intangibles, payment intangibles,

supporting obligations, instruments, documents, chattel paper, commercial tort claims, insurance, licenses and permits, intellectual property, trade secrets, goodwill, machinery, contract rights, and tax refunds, and all proceeds of the foregoing. Fannie Mae is authorized to take such actions and record such documents as it deems appropriate to reflect the granting and perfection of any such liens to secure obligations arising under the Lending Documents.

l.      **Marketing and Sale of Assets of the Receivership Estate**. Without further order of this Court, and at the request of Fannie Mae, the Receiver is authorized to market the Property for sale or lease and to retain a real estate broker or other consultant for such purpose; provided, however, any final sale of the Property is subject to approval from Fannie Mae and this Court. The Borrower hereby agrees to any sale that may be approved by Fannie Mae and waives any right to object to any such sale. In connection with the marketing, sale and management of the Property, the Receiver is authorized, but not directed, to retain real estate brokers or agents, surveyors, title companies, and conduct environmental assessments, take necessary environmental remedial measures, and perform or have performed other engineering and studies without further order of this Court.

m.      **Contracts**. Subject to the Receiver making funds available as described in this Order, the Borrower will direct the Existing Manager to continue to operate and perform under its New Management Agreement, as well as any contracts, leases, or other agreements required to operate the Property in the ordinary course of business. The Existing Manager may negotiate, make, enter into, or modify contracts or agreements related to the ordinary-course operations of the Property and the

Receivership Estate only with the prior approval of the Receiver. The Receiver may negotiate, enter, or modify contracts or agreements related to matters outside the ordinary-course operations of the Property and the Receivership Estate, and may immediately terminate any existing contract, agreement, lease, or instrument of the Borrower if the Receiver determines such agreement not to be beneficial to the Receivership Estate, provided that, the Receiver shall first consult with the applicable Existing Manager. The Existing Manager may terminate any contracts that are not useful in connection with the management and operation of the Property with the approval of the Receiver. The Receiver shall not be bound by any contract between JDM Washington and any third party that the Receiver does not expressly assume in writing. The Receiver is authorized to sign any and all documents on behalf of JDM Washington consistent with the terms of this Order.

n.      **Litigation**. The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or Receivership Estate subject to Fannie Mae's approval to the extent such settlement shall affect Fannie Mae's security interests in the Property and all related Fannie Mae interests hereto.

o.      **Mail**. The Borrower shall take any and all steps necessary to retrieve, collect, and review all non-Privileged Communications in mail addressed to JDM Washington, and is authorized to instruct the United States Postal Service to reroute, hold, or release such mail to the Existing Manager. The Borrower shall cause to be provided to the Receiver photocopies of all non-Privileged Communications in mail

14

addressed to JDM Washington that may relate to the Receiver's duties established hereunder or to the Receivership Estate.

p.     **Tax ID**. The Receiver is authorized to use any federal tax identification numbers of JDM Washington to carry out his duties established hereunder.

q.     **Licenses and Permits**. The Receiver is authorized to apply for, obtain, and pay any reasonable fees for any necessary license, permit, or other governmental approval relating to the Property, the Receivership Estate, or the operation of either of the foregoing (and all such expenses shall be considered ordinary-course expenditures payable from revenues generated from the Property or as otherwise provided by Fannie Mae in accordance with this Order), and confirm the existence of, and do all things necessary to protect and maintain, any such licenses, permits, or governmental approvals. Upon appointment, the Receiver shall provide written notice to all applicable regulatory authorities.

r.     **Receiver's Professionals**. Subject to the express terms of this Order, the Receiver is authorized to employ legal counsel to assist him in the discharge of his duties without the need for a Court order. In addition, upon further order of this Court, the Receiver is authorized to retain such accountants, consultants, managers, brokers, appraisers, and other professionals as are necessary to the proper discharge of the Receiver's duties, and to pay such professionals reasonable fees from the funds of the Receivership Estate in accordance with the Budget. Notwithstanding the foregoing, the Receiver is authorized, without Court approval, to employ legal counsel to assist with any regulatory issues that may arise in connection with the Receivership Estate, with such legal fees not to exceed $50,000.00, absent further Court order.

s.      **Repairs and Improvements**. The Borrower, through its Existing Manager and the Receiver, as applicable, is authorized to make such capital expenditures necessary or desirable relating to the safety, operations and maintenance of the Property as set forth in the Budget with the consent of Fannie Mae or as required by applicable regulations. The Receiver is authorized to make any alterations, renovations, repairs, improvements, or replacements of or to the Property or the Receivership Estate that the Receiver deems necessary or otherwise appropriate to cure the curable items cited in the Tenant Default Notice. In the event the Receiver desires to make any repairs to the Property or pay any unforeseen operating expenses other than those ordinarily and normally incurred in the operation of the business or which are required to address life safety concerns, the Receiver shall notify Fannie Mae, directly or through counsel, of the nature and approximate cost of the desired expenditure. Fannie Mae shall respond within three (3) business days of such notice to either authorize such expenditure or to join with the Receiver in a request for a hearing before the Court to determine whether such expenditure should be authorized. The provisions of this paragraph do not apply to improvements or repairs to the façade of the Property or to emergency repairs, life safety repairs, or repairs required by applicable city, municipal, or state ordinance or code or as directed by federal, state or local regulatory authorities.

t.      **Additional Powers**. The Receiver is hereby vested with any and all authority necessary or appropriate, at law and in equity, to carry out the intent of this Order. The Receiver is vested with all the powers and responsibilities of a receiver as provided in this Order, subject to the rights, titles, powers, privileges, and functions of the Federal Housing Finance Agency ("FHFA") and Plaintiff under the Housing and

Economic Recovery Act of 2008 ("HERA"). FHFA retains all its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator powers or functions as to Plaintiff's and FHFA's interests at issue herein.

6.      **Cooperation by Defendants**. JDM Washington for itself and its Existing Manager, as well as their respective agents, directors, officers, employees, attorneys, representatives, affiliates, all other persons and entities who are successors in interest to or are acting in concert with the foregoing, and all persons and entities with control, possession, knowledge, or oversight of any of JDM Washington's assets, including their Books and Records:

a.      Shall direct Existing Manager to cooperate with the Receiver and his professionals, representatives and their agents in connection with the Receiver's performance of his duties and the exercise of the authority granted to the Receiver herein (at no cost to JDM Washington, Existing Manager and such other related parties which are not paid out of the Receivership Estate); and

b.      Are hereby enjoined and restrained from interfering with the Receiver carrying out his duties under this Order and any further orders of the Court. Notwithstanding any provision of this Order, nothing contained in this Order shall provide the Receiver with any right of access to any of JDM Washington's privileged information (including by way of example and not limitation, any email, document, and conversation) subject to the Attorney/Client evidentiary privilege or Attorney Work Product Doctrine (a "Privileged Communication"). Should the Receiver discover that he has received, accessed, or obtained a Privileged Communication, he shall advise counsel by email, identify the Privileged Communication, destroy any copies in his

possession, and refrain from using any knowledge of the Privileged Communication in any manner or for any purpose. Nothing contained in this Order shall waive the JDM Washington's Attorney/Client evidentiary privilege or the Attorney Work Product Doctrine. In the event Court intervention is required to obtain JDM Washington's compliance with the terms of this Order, and an order is entered against JDM Washington, JDM Washington acknowledges and agrees that it may be liable for reasonable attorneys' fees and expenses incurred by the Receiver or Fannie Mae, as applicable, in obtaining such compliance.

7.      **Cooperation by Banks**. Each institution where an Existing Account is maintained is hereby ordered, upon the Receiver's request and presentation of this Order and except as expressly prohibited by applicable laws or regulations, to allow the Receiver to take over such Existing Account, to transfer control to the Receiver of such Existing Account and any funds contained within it, and to provide the Receiver with account statements and other account documents for such Existing Account upon request. The Receiver is authorized to execute new signature cards for such accounts to ensure the transfer of control of such accounts to the Receiver. Upon the Receiver's request and presentation of this Order, each institution where an Existing Account is maintained is ordered to delete all current designated signatories on such accounts except for those signatories identified by the Receiver, which may include the Existing Manager.

8.      **Addresses for Notice**. The Parties shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in this action and their counsel, to the extent such information is available. The Parties shall give notice to the Receiver of any service of process affecting the Receivership Estate or any correspondence, notices, or other communications received on behalf of the Defendant.

9.      **Suit Against Receiver**. All Parties and persons acting through them are hereby restrained and enjoined, without the prior approval of this Court, from taking any of the following actions, except in this Court, unless otherwise provided herein or in a subsequent order of this Court, consistent with general principles of equity and in accordance with its ancillary equitable jurisdiction in this matter:

a.      Except as provided herein with respect to Fannie Mae's right to foreclose on the Premises, the commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against the Receiver or any Receiver-Related Person (as defined herein), or the Receivership Estate, arising from the subject matter of this proceeding;

b.      The enforcement against the Receiver, property of the Receivership Estate, or any Defendant of any judgment obtained before the date this proceeding was commenced;

c.      Any act to obtain possession of property of the Receivership Estate or to exercise control over property of the Receivership Estate;

d.      Any act to create, perfect, or enforce any lien against the Property or any property of the Receivership Estate;

e.      Any act to collect, assess, or recover a claim against the Receiver or the Receivership Estate that arose before the date this proceeding was commenced;

f.      The setoff of any debt owed by the Defendants or the Receivership Estate, or secured by assets of the Receivership Estate, against any claim against the Defendants or the Receivership Estate; and

g.      Any claim for acts arising prior to entry of this Order.

10.    For the avoidance of doubt, nothing contained in this Order shall restrain or enjoin any party from seeking an order of this Court or of any appellate court of competent jurisdiction to obtain compliance by Fannie Mae, the Receiver, or any Receiver-Related Persons (as defined herein) with the terms of this Order.

11.    **No Personal Liability**. Trigild, acting by and through its employees including David Wallace, Chris Neilson, and Ian Lagowitz, is acting solely in its capacity as Receiver and, except as provided by applicable law, no risk, obligation, liability or expense incurred by the Receivership Estate shall become the personal risk, obligation, liability, or expense of the Receiver.

12.    **Security Deposits; Resident Contracts**. All security and other deposits paid by any resident, tenant, or other person to JDM Washington, or its agent shall be turned over to the Receiver, with such funds to be used in accordance with the terms and conditions of the applicable resident contract. Any other security or other deposit that any resident, tenant, or other person has paid or may pay to the Receiver, if otherwise refundable under the terms of a lease or other agreement with such resident, tenant, or other person, shall be an expense of the Receivership Estate and shall be refunded by the Receiver in accordance with the applicable lease or agreement.

13.    **Utilities**. Without prior order of this Court, no utility company, including electricity, gas, water, sewage, waste water, recycling, garbage, telephone, television, cable and internet providers, may terminate service to JDM Washington or to the Receivership Estate as a result of nonpayment of any obligation incurred prior to the date of the Commencement Notice, nor may any utility demand an additional deposit as a condition to the continued provision of service.

14.    **Replacement of Existing Manager**. The Receiver shall engage the Existing Manager to operate the Property in accordance with the terms of this Order and the New Management Agreement, and the Receiver shall be permitted, but not directed, to retain a replacement management company acceptable to Fannie Mae (the "New Manager") for the Property, and contract with that New Manager on commercially reasonable terms without further order of this Court. Any termination of a New Management Agreement shall be in accordance with the terms of such New Management Agreement. Any such New Manager shall have the same rights and responsibilities under this order as the Existing Manager. Any New Manager is expressly authorized to occupy the Property pending licensure of a new operator. Upon engagement of a New Manager, the Receiver shall confirm in writing to the Borrower and Existing Manager that the New Manager has been engaged to manage the Property. The Receiver shall consult and coordinate these communications with JDM Washington. The Parties agree to cooperate with each other to achieve the mutual goals of an efficient transfer of the Property.

15.    **Filing of Copies**. Within ten (10) days after entry of this Order, the Receiver shall, pursuant to 28 U.S.C. § 754, cause copies of Fannie Mae's Complaint and a copy of this Order to be filed in the federal district court for each district in which a Property is located.

16.    **Compliance with Applicable Laws**. Upon taking charge of the Premises as authorized by the immediately preceding paragraph, the Receiver shall comply with all applicable local, state and Federal regulations, including U.S. Department of Health and Human Services rules and regulations regarding the safety of residents.

17.    **Contact with Regulatory Authorities**. The Receiver is authorized and directed to coordinate with JDM Washington to contact any regulatory authority responsible for the Property and to provide a copy of this Order. The Receiver is authorized to file documents with applicable

regulatory authorities and pay all necessary fees. The Receiver is authorized to hire and retain professionals, including legal counsel, necessary to assist with such filings without further order of this Court.

18.    **Retention of Possession**. Subject to the limitations expressly provided in this Order, the Receiver shall retain possession of the Property until the earlier of (i) further order of this Court, (ii) the disposition of the Property by the Receiver, or (iii) disposition of the Property by sale or by judicial or nonjudicial foreclosure by Fannie Mae, with the express understanding that any such judicial or nonjudicial foreclosure may proceed without further order of the Court.

19.    **Receiver Compensation**. The Receiver shall be paid in accordance with the fee schedule attached as **Exhibit 2** to the Declaration of Joel Shaddox in Support of Plaintiff's Order to Show Cause Appointing a Receiver (the "Shaddox Decl."), or such other arrangement agreed to by the Receiver and Fannie Mae and approved by the Court.  All fees, together with allowed out of pocket fees, costs and expenses, approved in this paragraph are to be paid as a priority from the rents and revenues of the Property.

20.    **Existing Manager Cooperation**. Borrower shall, either directly or through its Existing Manager, direct its Existing Manager to continue to provide all services required under the New Management Agreement or applicable licensing or regulatory requirements to operate and manage the Property under applicable law and shall cooperate with the Receiver in performing these services, and in the orderly transition to any New Manager, and shall execute promptly all applications, assignments, consents, and documents requested by the Receiver to facilitate such transition; provided that, in all cases, appropriate funds are provided to the Existing Manager to carry out such obligations. The Receiver is further authorized to compensate any such Existing Manager in accordance with the provisions of any New Management Agreement. Upon successful

22

transition of a Property to a New Manager, the Receiver shall cause to be terminated the New Management Agreement corresponding to the Property upon thirty (30) days' notice, unless the Parties agree otherwise, and the Existing Manager and their affiliates shall immediately be relieved and released from their obligations to operate and/or manage the Property.

21.    **Accounting of Rents**. No later than the 25th day of each month, for the Property for so long as it is in the Receivership Estate, the Receiver shall make an accounting of all Rent collected and all expenses paid for the previous month and file such accounting with the Court and shall serve upon Fannie Mae's counsel and JDM Washington's counsel a copy of said accounting. The Receiver shall file a final report within ninety (90) days after the termination of the receivership unless otherwise ordered by the Court.

22.    **Payment of Indebtedness**. Within ninety (90) days after the termination of the receivership, the Receiver shall pay to Fannie Mae all receipts remaining, if any, after payment of the items set forth herein, to be applied to the indebtedness of JDM Washington to Fannie Mae, pursuant to the Note. The Receiver is authorized, but not required, to make any or all the payments set forth in this paragraph during the pendency of the receivership.

23.    **No Impairment**. Fannie Mae's title to and security interest in the rents, issues, profits, and revenues of the Property shall not be impaired by the appointment of the Receiver. No lien, claim, or other security interest in any Property shall be affected by this Order, nor shall the appointment of the Receiver impair Fannie Mae's right or ability to proceed with any judicial or nonjudicial foreclosure of any Property now posted or instituted or hereafter posted or instituted by Fannie Mae, with the express understanding that judicial or nonjudicial foreclosure of any Property may occur without further order of the Court in accordance with applicable state law. Notwithstanding any other term of this Order, Plaintiff and FHFA, as Conservator of Fannie Mae,

retain and may exercise without further Court approval any and all of their rights under the Loan Documents and HERA. The Receiver's powers as set forth in this Order do not in any way diminish Plaintiff's rights under the Loan Documents or FHFA's rights, titles, powers, functions, and protections as Plaintiff's Conservator and successor under HERA.

24.    **No Interference**. Nothing in this Order is intended to interfere with, or adversely affect, any trustee's sale or other exercise of Plaintiff's or FHFA's rights, nor is the Order intended to constitute a waiver of, or election not to proceed with, any commissioner's sale.

25.    **Liability**:

a.    Except as provided otherwise in this Order, neither Fannie Mae nor the Receiver shall be liable for any obligations incurred by or on behalf of any Defendant, Existing Manager, New Manager, or other property operator, whether or not such obligations have been liquidated and whether or not such obligations are conditional, that arose prior to this Order and that relate in any way to the acquisition, ownership, maintenance, operation, financing, sale, or use of the any of the Premises and of any part of it. If obligated, Defendants shall remain liable for all obligations of the Property.

b.    This Order shall not impose upon either Fannie Mae or the Receiver any liability to any party for any claim, action, or cause of action relating to the Property and arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver, including any liability resulting from the performance of services rendered by third parties on behalf of Defendants, and any liability to which Defendants are currently or may ultimately be exposed under any applicable laws pertaining to the ownership, management, and operations of the Property.

c.     To the extent the Receiver continues the services of any current employee, agent, or other person with respect to the Property, the Receiver shall not be liable for any claims of any nature whatsoever of such employee, agent, or other person that arose prior to the date and time of the entry of this Order, including any liability related to unemployment or worker's compensation claims, claims or violations related to Employee Retirement Income Security Act of 1974, or any other claims relating to employee benefits or employee benefits plan.

d.     Except for acts of willful misconduct, gross negligence, or fraud, neither the Receiver nor any of his employees, agents, representatives, attorneys, officers, directors, partners, shareholders, members, affiliates, successors or assigns (the "Receiver-Related Persons") shall not have any liability for any loss or damage incurred by the Receivership Estate, any Defendant, any Defendant's clients, associates, or any of their respective subsidiaries, affiliates, officers, directors, agents, employees, or equity holders because of any act performed or not performed by the Receiver or any Receiver-Related Person in connection with the discharge of the Receiver's duties and responsibilities hereunder. Further, there shall be no claims brought by any party arising out of related to the appointment of the Receiver.

e.     For the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver will have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

f.     Any liability incurred by, or recourse against, the Receiver other than for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of

duties, or actions in violation of orders of this Court, will be limited in order of priority first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys, other professionals or contractors), second to the Receiver Bond, and third to the Property funds generated by the Property and received by the Receiver in the course of the Receivership. Any claims or actions asserting liability against the Receiver, the Receiver's agents, employees, other professionals, or contractors of Receiver must be brought by motion in this action.

26.    **Not Deemed Owners**. Neither the Receiver nor Fannie Mae shall be deemed in any way to be an owner or operator of the Property or any agent of JDM Washington, owner, or operator of the Property. Except for claims arising from the Receiver's willful misconduct, gross negligence, or fraud, the Receiver shall have no liability as to any claim, action, or cause of action of any third party who has or would have claims against JDM Washington or any officer, director, or shareholder thereof (including any claims under any federal or state environmental laws).

27.    **Further Instructions**. The Receiver or any party may, upon 72 hours' notice to each other (or, in the case of an extreme emergency, on 24-hours' notice), petition the Court for instructions in furtherance of this Order and any further orders the Court may make with respect to the Receivership Estate.

28.    **Inventory**. Within thirty (30) days of the date of this Order and with the assistance of the Existing Manager, the Receiver shall file an inventory of all assets of the Receivership Estate, including all real property, tangible personal property and intangible personal property, but excluding the personal property of any residents of the Property.

29.    **Funds Received**. Money coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be held by the Receiver subject to such orders as this Court may hereafter issue.

30.    **Tax Returns**. The Receiver shall not be responsible for the preparation and filing of any tax returns for JDM Washington or any affiliate(s) of JDM Washington or any Existing Manager or New Manager, including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns.

31.    **Discharge of Receiver**. The Receiver may at any time request from the Court that he be exonerated, discharged and released from his appointment as Receiver.

32.    **Jurisdiction**: This Court shall retain exclusive jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby the interpretation and implementation of this Order and the Properties.

33.    **Duration**: This receivership shall continue in effect until further order of this Court.


**IT IS SO ORDERED.**


Dated: New York, New York
      March __21__, 2025

                                                      **SO ORDERED:**

                                                     _____

                                                     Hon. Lewis J. Liman, U.S.D.J.