UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

    Plaintiff,

       v.

JDM WASHINGTON STREET LLC,
SWING STAGING LLC, LINK
RENOVATION, INC., CARDELLA
TRUCKING CO., INC., PHOENIX
SUTTON STR. INC., THE PACE
COMPANIES NEW YORK, INC.,
AMERICAN PIPE & TANK LINING
CO., INC., ADVANTAGE
WHOLESALE SUPPLY LLC,
JOSEPH MOINIAN, an individual,
ABC COMPANIES 1–100 (fictitious
entities), & JOHN DOES 1–100
(fictitious persons),

    Defendants.

---

Civil Action No. 1:25-cv-01728-LJL

## **FIRST AMENDED VERIFIED COMPLAINT**

Plaintiff Federal National Mortgage Association ("Fannie Mae," "Plaintiff," or "Lender"), by its attorneys ArentFox Schiff LLP ("AFS" or "ArentFox Schiff"), as and for its Verified Complaint[1] against the above-captioned Defendants, alleges as follows:

### **Nature of the Action**

1.    This is an action by Fannie Mae to foreclose a certain mortgage (as more particularly defined herein, the "Mortgage") encumbering the ground lease estate (the "Ground

---

[1] The Verification of Joel Shaddox, dated April 8, 2025 (the "Verification"), is attached hereto at **Exhibit R**.

Lease Estate") on property located at 90 Washington Street, New York, New York (the "Property" or "90 Washington").

2.    Due to Borrower's defaults under the Borrower Documents,[2] Fannie Mae seeks to foreclose the Mortgage.

3.    Fannie Mae also seeks payment of fees, costs, and expenses in connection with protecting its security pursuant to Section 12 of the Mortgage, and the appointment of a receiver (the "Receiver") to take possession of the Ground Lease Estate that is the subject of this foreclosure action, operate and manage the Property that is the subject of this foreclosure action, and collect Rent for debt service and operation of the Property.

### The Parties

4.    Fannie Mae is a government-sponsored enterprise chartered by Congress to enhance the nation's housing finance market, organized and existing under the laws of the United States and is deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation. *See* 12 U.S.C. § 1717(a)(2)(B). It is authorized to transact business in New York. Fannie Mae is the current owner and holder of the Note and Mortgage (defined below). Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing. Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq*. Among other powers, Congress has granted the Director of FHFA the authority to place

---

[2] The Note, the Security Instrument, the Reimbursement Agreement, and all other documents executed by Borrower in connection with the Bond financing, the credit enhancing of the Bonds, and the making of the Loan are collectively referred to as the "Borrower Documents." Capitalized terms not otherwise defined herein have the meanings and definitions given to them in the Reimbursement Agreement.

Fannie Mae into conservatorship under certain, statutorily defined conditions, which the Director did in 2008. As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae. FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law. *See, e.g.,* 12 U.S.C. § 4617(f).

5.      On September 6, 2008, pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), the Director of FHFA placed Fannie Mae into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator FHFA succeeded to all of Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as Conservator is statutorily empowered to preserve and conserve Fannie Mae's assets and property, to operate Fannie Mae, to perform all of Fannie Mae's functions in Fannie Mae's name, and to collect all obligations and money due to Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)–(v). Congress also mandated that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or receiver." 12 U.S.C. § 4617(f). Because the Receiver derives its authority from the Court, Section 4617(f) also precludes the Receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

6.      HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." *See* U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third-party that affects Fannie Mae's interest in the loan agreement, note or deed of trust owned by Fannie Mae or under which Fannie Mae is beneficiary. FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver for the Property under the circumstances herein. However, FHFA reserves its rights as to terms for the

appointment of a receiver that have not been approved by FHFA in advance.

7.      Defendant JDM Washington Street LLC ("JDM Washington," "Defendant," "Borrower," or "Tenant") is a New York limited liability company, located at 3 Columbus Circle, Ste. 2300 New York, New York 10019.  Plaintiff has conducted its due diligence as to the members of JDM Washington, and no members have been found to be citizens of the District of Columbia.

8.      Defendant Swing Staging LLC ("Swing Staging") is a limited liability company existing under the laws of the state of New York with a place of business located at 25-20 Borden Ave, Long Island City, NY 11101.  Plaintiff has conducted its due diligence as to the members of Swing Staging, and no members have been found to be citizens of the District of Columbia.

9.      Link Renovation, Inc. ("Link Renovation") is a New York corporation located at 129 Morani Street, Staten Island, NY 10314.

10.     Cardella Trucking Co., Inc. ("Cardella") is a New York corporation located at 2400 Tonnelle Avenue, North Bergen, New Jersey 07047.

11.     Phoenix Sutton Str. Inc. ("Phoenix") is a New York corporation located at 128 Sutton Street, Brooklyn, New York 11222.

12.     The Pace Companies New York, Inc. ("Pace") is a New York corporation located at 41 Box Street, Brooklyn, New York 11222.

13.     American Pipe & Tank Lining Co. Inc. ("American Pipe & Tank Lining") is a New York corporation located at 11-42 46th Road, Long Island City, New York 11101.

14.     Advantage Wholesale Supply LLC ("Advantage Wholesale Supply") is a limited liability company existing under the laws of the state of New York with a place of business located at 172 Empire Blvd. Brooklyn, NY 11225.  Plaintiff has conducted its due diligence as to the members of Advantage Wholesale Supply, and no members have been found to be citizens of the

District of Columbia.[3]

15.     Defendant Joseph Moinian ("Moinian") is an individual residing at 1045 Park Avenue New York, New York 10028. Moinian's business address is 3 Columbus Circle, Ste. 2300 New York, New York 10019.

16.     On information and belief, Defendants ABC Companies and John Does ("Non-Record Lienors") have or may have claims, encumbrances, interests and/or liens against the Property. On information and belief, after reasonable inquiry and due diligence, the name(s) and address(es) of said Defendant(s) is/are not known or cannot be ascertained at this time. For diversity purposes, the citizenship of said Defendant(s), to the extent said Defendant(s) exist(s), cannot be determined at this time.

### Jurisdiction and Venue

17.     Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

18.     Fannie Mae is deemed to be a District of Columbia corporation for purposes of jurisdiction and venue. 12 U.S.C. § 1717(a)(2)(B).

19.     This Court has personal jurisdiction over the Defendants because the Loan Agreement and Reimbursement Agreement contain choice-of-law and consent-to-jurisdiction provisions that expressly provide for jurisdiction and venue in the State of New York.

20.     In addition, venue is proper because the Property and the transactions giving rise to the claims herein occurred in the Southern District of New York, and this litigation concerns, *inter*

---

[3] Swing Staging, Link Renovation, Cardella, Phoenix, Pace, American Pipe and Tank Lining, and Advantage Wholesale Supply are referred to collectively as the "Lienor Defendants".  Lienor Defendants and Borrower are together referred to as the "Defendants."

*alia*, foreclosure of a ground lease on real property located in New York City, New York.

**Factual Background**

**I.**      **The Ground Lease, 60 Day Notice, Acceleration**

21.      Battery Associates LLC, Edward Katz, WSK Washington, LLC, MJK Washington LLC, GWK Washington, LLC, 90 Washington Street, LLC and HSBC Bank USA (collectively, the "Landlord" or "Ground Lessor") and Borrower, as Tenant, by mesne assignments, are parties to an Indenture of Lease dated September 21, 1966, with respect to the Property, as amended by Agreement dated May 22, 1968, and as further amended by Amendment to Ground Lease dated as of January 14, 2003 (collectively, "Ground Lease").[4]

22.      Fannie Mae is Leasehold Mortgagee under the Ground Lease.

23.      The Ground Lease has a term of 100 years, which commenced on May 1, 1967, and expires on April 30, 2066, unless terminated earlier.

24.      Pursuant to Section 17.03(c)(iii) of the Ground Lease, a notice of default or notice of termination given by Landlord to Tenant is not binding on Leasehold Mortgagee (here, Fannie Mae) unless a copy of such notice is given to Leasehold Mortgagee.

25.      On September 6, 2024, ArentFox Schiff, on behalf of Fannie Mae received a Sixty (60) Day Notice of Event of Default (the "60 Day Notice"), informing Fannie Mae that Landlord had served Tenant with a Thirty (30) Day Notice to Cure, dated August 24, 2018 ("Tenant Default Notice"), to cure the Ground Lease violations set forth in the Tenant Default Notice; that the cure date was subsequently extended by Court order through and including a determination on the merits in the action titled *JDM Washington Street LLC v. 90 Washington Street LLC et al.*, Supreme

---

[4] A copy of the Ground Lease, which includes the Amendment to Ground Lease dated as of January 14, 2003 (the "2003 Amendment"), is attached hereto as **Exhibit A**.

Court of State of New York, New York County, Index No. 161333/2019 (the "Yellowstone Action"

or the "2019 Action") and that after a trial on the merits, in the Yellowstone Action, the Supreme

Court of the State of New York issued an Order and Judgment on September 5, 2024, that was

entered by the Court on September 6, 2024, holding, among other things, that Tenant failed to cure

certain of the defaults in the Notice to Cure, including but not limited to defaults relating to the

façade, resulting in an Event of Default under Article 18.01 of the Ground Lease (the "Order and

Judgment,").[5]  Citing Section 17.03(e)(iii)(x) of the Ground Lease, the 60 Day Notice gave Fannie

Mae as Leasehold Mortgagee until November 11, 2024 ("Leasehold Mortgagee Cure Date"), to

cure the defaults in the Notice to Cure and that in the event the defaults identified in the 60 Day

Notice are not cured by Leasehold Mortgage by the Leasehold Mortgagee Cure Date, that Landlord

will elect to terminate the Ground Lease.

26.     Fannie Mae, by letter dated October 3, 2024 (the "60 Day Notice Response"),

invoked an extension of the Leasehold Mortgagee Cured Date pursuant to Section

17.03(e)(iii)(y)(B)(1)-(2) of the Ground Lease, which permits Fannie Mae to provide "Landlord

an instrument in writing…wherein it agrees to use reasonable efforts to cure [the] default" and

"diligently pursue[] the curing of such default…for such period as may be necessary to cure

same…."

27.     On November 5, 2024, AFS, on behalf of Fannie Mae, sent the Borrower and

Joseph Moinian, as Key Principal under the Mortgage and Reimbursement Agreement, a Default

and Acceleration Letter (the "Default and Acceleration Letter"), notifying the Borrower and Key

Principal that the Loan is in default, it has been accelerated, Borrower's license to collect rents has

---

[5] A copy of the Order and Judgment is attached hereto as **Exhibit B**. On April 8, 2025, the Supreme Court of the State of New York, Appellate Division, First Department, affirmed the Order and Judgment.  A copy of the First Department's Decision and Order is attached hereto as **Exhibit U**.

been terminated, demanding immediate payment of the full unpaid principal balance of the Note and informing Borrower and Key Principal that Fannie Mae intends to institute foreclosure proceedings and seek appointment of a receiver, in addition to its rights and remedies available at law or in equity.[6]

## II.     The Reimbursement Agreement, Loan Documents, and Related Agreements

### A.     The Loan, Note & Assignment

28.     NYC Housing Development Corporation (the "Original Lender") issued its $74,800,000 aggregate principal amount of New York City Housing Development Corporation Multi-Family Rental Housing Revenue Bonds (90 Washington Street), 2005 Series A (the "Bonds") pursuant to its Multi-Family Rental Housing Revenue Bonds (90 Washington Street) Bond Resolution adopted by Original Lender on January 21, 2005 (the "Bond Resolution").[7]

29.     The Bank of New York Mellon f/k/a The Bank of New York, serves as trustee for the Bonds (the "Bond Trustee") under the Bond Resolution.

30.     At the request of JDM Washington, Fannie Mae agreed to provide credit enhancement for the Bonds pursuant to its Direct Pay Irrevocable Transferable Credit Enhancement Instrument dated January 31, 2005, executed by Fannie Mae, and delivered to the Bond Trustee (the "Original Credit Enhancement Instrument") as credit enhancement and liquidity support for the Bonds.[8]

31.     Borrower and Fannie Mae entered into that certain Reimbursement Agreement dated as of January 31, 2005, relating to the Bonds, pursuant to which, Borrower agreed, *inter alia*, to reimburse Fannie Mae for making advances under the Original Credit Enhancement Instrument

---

[6] A copy of the Default and Acceleration Letter is attached hereto as **Exhibit C**.

[7] A copy of the Bond Resolution is attached hereto as **Exhibit D**.

[8] A copy of the Credit Enhancement Instrument is attached hereto as **Exhibit E**.

(the "Original Reimbursement Agreement").  On March 17, 2008, in connection with the conversion of the interest rate mode on the Bonds, Borrower and Fannie Mae amended and restated the Original Reimbursement Agreement in its entirety pursuant to the Amended and Restated Reimbursement Agreement (the "A&R Reimbursement Agreement")[9] and Fannie Mae delivered to the Bond Trustee, its Amended and Restated Direct Pay Irrevocable Transferable Credit Enhancement Instrument "Credit Enhancement Instrument") in replacement for the Original Credit Enhancement Instrument. On August 29, 2008, Borrower and Fannie Mae entered into that certain First Amendment to Amended and Restated Reimbursement Agreement (the "First Amendment to A&R Reimbursement Agreement").[10]  The A&R Reimbursement Agreement, as amended by the First Amendment to A&R Reimbursement Agreement are together, the "Reimbursement Agreement").

32.    Original Lender loaned the $74,800,000 proceeds of the Bonds to Borrower (the "Loan") pursuant to that certain Financing Agreement dated as of January 1, 2005, between Original Lender and Borrower (the "Loan Agreement").[11]

33.    The Loan is evidenced by that certain Multifamily Note dated January 31, 2005, in the principal amount of $74,800,000 (the "Note"), which was endorsed by Original Lender to Fannie Mae and the Bond Trustee by Endorsement to Multifamily Note dated January 31, 2005.[12]

34.    Joseph Moinian executed and delivered a Key Principal Guaranty dated as of January 31, 2005, for the benefit of Fannie Mae (the "Key Principal Guaranty").[13]

---

[9] A copy of the A&R Reimbursement Agreement is attached hereto as **Exhibit F**.

[10] A copy of the First Amendment to A&R Reimbursement Agreement is attached hereto as **Exhibit G**.

[11] A copy of the Loan Agreement is attached hereto as **Exhibit H**.

[12] A copy of the Note is attached hereto as **Exhibit I**.

[13] A copy of the Key Principal Guaranty is attached hereto as **Exhibit J**.

35.     Borrower executed and delivered that certain Multifamily Mortgage, Assignment of Rents and Security Agreement, dated as of January 31, 2005, encumbering Borrower's Ground Lease Estate at the Property, for the benefit of Original Lender for the Loan and Fannie Mae for Borrower's obligations under the Reimbursement Agreement (the "Mortgage") and recorded on February 16, 2005, as City Register File No. ("CRFN"): 2005020600018005 New York City Department of Finance Office of the City Register (the "Recording Office").[14]

36.     Original Lender assigned its rights to (i) the Mortgage, the Note, ancillary collateral documents, and other documents evidencing, securing or otherwise related to the Loan (collectively, the Mortgage Documents"), and (ii) the Loan Agreement (together with the Mortgage Documents, the "Assigned Documents") to Fannie Mae and the Bond Trustee, pursuant to that Assignment and Agreement (the "Assignment and Agreement") dated as of January 1, 2005, among Original Lender, Bond Trustee and Fannie Mae, and acknowledged, accepted and agreed to by Borrower and recorded on February 16, 2005, as CRFN: 2005020600018006 in the Recording Office.

37.     At the request of Fannie Mae, pursuant to Section 2.4(3) of the Assignment and Agreement, Bond Trustee endorsed the Note to Fannie Mae pursuant to that certain Endorsement to Note dated as of December 11, 2024 (the "Note Endorsement").[15]

38.     At the request of Fannie Mae, pursuant to Section 2.4(3) of the Assignment and Agreement, Bond Trustee assigned the Assigned Documents to Fannie Mae pursuant to the Assignment of Mortgage Documents and Loan Agreement executed and delivered by Bond Trustee to Fannie Mae on December 11, 2024 (the "Bond Trustee Assignment").[16]

---

[14] A copy of the Mortgage is attached hereto as **Exhibit K**.

[15] A copy of the Note Endorsement is attached hereto as **Exhibit L**.

[16] A copy of the Bond Trustee Assignment is attached hereto as **Exhibit M**.

39.     At the request of Fannie Mae, pursuant to Section 2.4(3) of the Assignment and Agreement, Bond Trustee assigned the Mortgage to Fannie Mae pursuant to the Assignment of Mortgage dated as of December 11, 2024 (the "Mortgage Assignment").

40.     The Mortgage Assignment was recorded on January 16, 2025, as CRFN: 2025000015876 in the Recording Office.[17]

41.     PNC Real Estate is the Fannie Mae loan servicer for the Loan ("PNC" or the "Servicer").

**B.     The Mortgage**

42.     The Borrower, in Section 3(a) of the Mortgage: (a) assigned all Rents (as defined therein) to Lender, whom it authorized to collect and receive all Rents without any further action by Borrower; (b) Borrower retained a revocable license to, among other things, collect Rents and operate the Premises absent an Event of Default, and (d) agreed that upon an Event of Default, Lender was authorized to collect all Rents directly and to take possession and control of the Property.

43.     Additionally, in Section 3(d) of the Mortgage, the Borrower consented to Fannie Mae's application to the court for appointment of receiver:

> Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law.

---

[17] A copy of the Mortgage Assignment is attached hereto as **Exhibit N**.

44.    Section 43 of the Mortgage provides that upon Event of Default, Fannie Mae is entitled, among other rights, to foreclose on the Mortgage.

### C.    The Key Principal Guaranty

45.    On January 31, 2005, Moinian executed the Key Principal Guaranty for the benefit of Fannie Mae (the "KPG" or "Guarantee").[18]

46.    Pursuant to the KPG, Moinian guaranteed to Fannie Mae "the full and prompt payment when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of all amounts for which Borrower is personally liable under Paragraph 10 of the Note." *See* Exhibit J at § 2.

47.    Paragraph 10(b) of the Note makes Borrower personally liable for repayment of a portion of the Indebtedness equal to any loss or damage suffered by Fannie Mae as a result of certain specified events, including but not limited to the failure to pay Lender upon demand after any Event of Default, all Rents to which Fannie Mae is entitled under the Mortgage and failure to deliver to Fannie Mae all books and records during an event of default or to permit Fannie Mae or its agents to audit Borrower's books and records.

48.    Following delivery of the Default and Acceleration Letter, AFS on behalf of Fannie Mae, sent Borrower and Moinian a letter dated December 23, 2024 (the "December 23 Letter"), which directed the Borrower to provide a schedule of rents received during November and a schedule of third-party operating expenses paid in November to Servicer and promptly remit the remainder (less the amount already remitted) to Servicer.[19]

49.    Borrower is not entitled to retain any such remainder and is required to provide

---

[18] *See* **Exhibit J**.

[19] A copy of the December 23, 2024 Letter is attached hereto as **Exhibit S**.

monthly accountings for each subsequent month of rents received and third-party expenses paid remitting the remainder to Servicer.

50.    The December 23 Letter was promptly followed by a letter from AFS to Borrower and Moinian dated December 30, 2024 (the "December 30 Letter"), which requires the Borrower to remit to Servicer,  the net operating income for the prior month, supported by specific detailed information, including a statement of monthly income and expenses, rent roll, collection report and operating statements, all certified by an authorized Borrower representative.[20]

51.    To date, while Borrower has remitted certain funds to the Servicer, it has provided none of the required reports and back-up information to support the amounts remitted. Its failure to do so subjects the Borrower, and Moinian, pursuant to the KPG, to liability pursuant to Section 10(b) of the Note.

52.    Section 10(c) of the Note makes Borrower personally liable for all Indebtedness for certain other events, including but not limited to the impermissible transfers that would include the numerous mechanics' liens that remain of record. These mechanics' liens subject Borrower and Moinian, pursuant to the KPG, to full recourse for the Indebtedness, which both were informed of explicitly in Section III of the Default and Acceleration Letter (*see* **Exhibit C**), yet to date, Borrower and Moinian have failed to remove these liens of record.

53.    Once the Receiver is able to review the Borrower's books and records (or if Borrower fails to provide such books and records), Fannie Mae may learn of other, additional basis for recourse liability, whether to the extent of loss, or for the full indebtedness. Fannie Mae reserves the right to assert any such claims following its knowledge of the same.

54.    Moinian's obligations under the KPG "constitute an unconditional guaranty of

---

[20] A copy of the December 30, 2024 letter is attached as **Exhibit T**.

payment and not merely a guaranty of collection," and the obligations "shall be performed without demand by Fannie Mae and shall be unconditional irrespective of the genuineness, validity, regularity or enforceability of the Note, the Mortgage, or any other Loan Document, and without regard to any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor." *See* **Exhibit J** at §§ 4, 5.

55.    Pursuant to Section 5 of the KPG, Moinian waived all rights requiring Fannie Mae to "(a) proceed against Borrower or any other guarantor of Borrower's payment or performance with respect to the Indebtedness…, (b) … proceed against any general partner of the Borrower or guarantor, (c) proceed against or exhaust any collateral held by Fannie Mae to secure the repayment of the Indebtedness, or (d) pursue any other remedy it may now or hereafter have against Borrower…."

56.    Pursuant to Section 3 of the KPG, the Moinian's obligations under the KPG "shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the Mortgage." Therefore, Moinian is liable to Fannie Mae for any deficiency remaining unsatisfied after sale at foreclosure of the Property.

57.    Fannie Mae may seek any deficiency judgment that results from this proceeding from Moinian.

**D.    Operation and Management of the Property**

58.    The Property is managed by Columbus Property Management LLC (the "Manager"), pursuant to the Management Agreement entered into on January 1, 2015, among Borrower and Manager (the "Management Agreement").[21]

59.    Pursuant to Section 4 of the Assignment of Management Agreement dated

---

[21] A copy of the Management Agreement is attached hereto as **Exhibit O**.

September 22, 2015, among Borrower, Fannie Mae, and Manager (the "<u>Assignment of Management Agreement</u>")[22] upon receipt by Manager of written notice from Fannie Mae that an Event of Default has occurred and is continuing, Fannie Mae has the right to exercise all rights as owner of the Mortgaged Property.

60.     On March 25, 2025, pursuant to Paragraph 4 of the Management Agreement, AFS, on behalf of Fannie Mae, sent Manager a letter (the "<u>March 25 Letter</u>") notifying Manager that Events of Default have occurred.  In addition, the March 25 Letter notified Manager that the Court granted Fannie Mae's Application to Appoint a Receiver and appointed Trigild as Receiver.

**E.     The Events of Default**

61.     On November 5, 2024, Fannie Mae sent the Borrower a Default and Acceleration Letter describing the Events of Default and demanding acceleration of payment.

62.     Borrower has defaulted under Section 22(g) of the Mortgage.

63.     Under Section 22(g):

Any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in Sections 22(a) through (f)), as and when required, which continues for a period of 30 days after written notice of such failure by Lender to Borrower (unless such default cannot with due diligence be cured within 30 days but can be cured within a reasonable period and will not, in Lender's sole discretion, adversely affect Lender or result in impairment of the Note or this Instrument, in which case no Event of Default shall be deemed to exist so long as Borrower shall have commenced to cure the default within 30 days after receipt of notice, and thereafter diligently and continuously prosecutes such cure to completion), but no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

64.     Section 17(a) of the Mortgage requires the Borrower to keep the Property in good

---

[22] A copy of the Assignment of Management Agreement is attached hereto as **Exhibit P**.

repair and restore and repair promptly any damaged part of the Property.

65.    Section 57 of the Mortgage requires Borrower to comply with all terms of the Ground Lease.

66.    On September 5, 2024, the Supreme Court of the State of New York entered an Order and Judgment finding Borrower materially breached the Ground Lease by failing to 1) cure Local Law 11 violations; 2) cure the gaps in the mesh on the lower portion of the building; 3) complete the façade work on the upper portion of the building; 4) obtain a permit for the structural work pursuant to the OJR plans; 5) obtain the Landlord's prior approval of the Architect; 6) obtain the Landlord's prior approval of the Panel Project; and 7) by allowing mechanic's liens to be placed on the building. *See* **Exhibit B**.

67.    The Supreme Court of the State of New York also found that "the façade related defaults in the Notice to Cure are not curable." *See* **Exhibit B**, at 18.

68.    Borrower breached Sections 17(a) and 57 of the Mortgage by failing to adhere to all terms of the Ground Lease including repairing the façade of the Property.  This constitutes an Event of Default under Section 22(g) of the Mortgage.

69.    Borrower has also failed to comply with Section 16 of the Mortgage, which precludes any lien or encumbrance on the Property other than the Mortgage.

70.    Section 21(a)(1) of the Mortgage provides that a Transfer of any interest in the Property constitutes an Event of Default.

71.    The Property has impermissible liens and violations that constitute Events of Default under Sections 22(e) and 22(h) of the Mortgage. *See, e.g.,* **Exhibit C**, Schedule 1.

72.    Under Section 22(j) of the Mortgage:

Default by the Borrower, beyond any applicable grace, notice or cure period, in the payments or performance of any obligation of the Borrower contained in (i) the

Bond Documents, (ii) the Reimbursement Agreement, (iii) any subordinate financing approved by the Lender, (iv) the Regulatory Agreement, or (v) any form of public, quasi-public, public/private or private debt and/or equity infusion, grant, subsidy, tax relief or abatement, plan, program or other form of assistance approved by the Lender shall, at the Lender's or Fannie Mae's option, as the case may be, in its discretion, but subject to the terms and conditions of the Financing Agreement and the Reimbursement Agreement, constitute an Event of Default under this Instrument;

73.    Borrower has also failed to comply with its obligations under the Reimbursement Agreement.

74.    Section 9.4(a) of the Reimbursement Agreement requires Borrower to inform Fannie Mae and Servicer of any Default or Event of Default, specifying the nature and period of existence of such event and the actions being taken or proposed to be taken.

75.    Section 9.4(c) of the Reimbursement Agreement requires Borrower to notify Fannie Mae of the commencement of any proceeding by or against the Borrower to notify Fannie Mae of the commencement of any proceeding by or against the Borrower, which if adversely determined would have, or could reasonably expect to have a material adverse effect on the Borrower or the Property.

76.    Section 12.2 of the Reimbursement Agreement provides that if an Event of Default occurs the Obligations and all amounts owed shall immediately become due and payable. Section 12.2(a) specifically provides:

Upon the occurrence of an Event of Default under this Agreement, the Obligations and all amounts owing under this Agreement may be declared by Fannie Mae to become immediately due and payable, without presentment, demand, protest or notice of any kind, including notice of default, notice of intent to accelerate or notice of acceleration. In addition, Fannie Mae shall have the right to take such action at law or in equity, without notice or demand, as it deems advisable to protect and enforce the rights of Fannie Mae against the Borrower and/or in and to the Mortgaged Property....

77.    Borrower failed to inform Fannie Mae of any of the Events of Default described in

the Default and Acceleration Letter, or the actions being taken, its commencement of litigation that led to the Order and Judgment, or any mechanic lien litigations. All failures constitute Events of Default pursuant to Section 12.1(h) of the Reimbursement Agreement.

> Pursuant to Section 43 of the Mortgage, a any time after the occurrence of an Event of Default, Fannie Mae, at Fannie Mae's option, may declare the Indebtedness to be immediately due and payable without further demand, and **may foreclose this [Mortgage] by judicial proceeding, shall be entitled to the appointment of a receiver, without notice**, and may invoke any other remedies permitted by New York law or provided in this [Mortgage] or in any other Loan Document. Lender may, at Lender's option, also foreclose this [Mortgage] for any portion of the Indebtedness which is then due and payable, subject to the Continuing lien of this [Mortgage] for the balance of the Indebtedness. Lender shall be entitled to collect all costs and expenses allowed by New York law, including attorney's fees, costs of documentary evidence, abstracts, title reports statutory costs and any additional allowance made pursuant to Section 8303 of the Civil Practice Law and Rules….

*See* **Exhibit K**, Mortgage, § 43 (emphasis added).

78.     Pursuant to Section 43 of the Mortgage, Section 7 of the Note, and Section 12.2 of the Reimbursement Agreement, all amounts due and owing under the Mortgage and Reimbursement Agreement have been accelerated and are fully due and payable to Fannie Mae.

79.     The unpaid principal amount of the Loan as of February 18, 2025, was $74,000,000 excluding past due interest, charges, and fees.

80.     All conditions precedent to Fannie Mae's right to seek foreclosure and have a receiver appointed have been performed, occurred, or otherwise have been waived.

81.     Before the filing of this lawsuit, Fannie Mae received and reviewed a title search of the public record for the purposes of identifying any lienholder or other persons and entities with an interest in the property that is subject and subordinate to Plaintiff's lien and thus subject to the prospective foreclosure. The effective date of the title search is February 18, 2025 (the "Title

Search").[23]

## **COUNT I**

### *(Against All Defendants for Foreclosure of Mortgage Against Ground Lease Estate)*

82.     Fannie Mae repeats and realleges the allegations contained in Paragraphs 1 through 81 of the Complaint as if set forth herein at length.

83.     Based on the Events of Default, Fannie Mae is entitled under Section 43 of the Mortgage to foreclose the Mortgage against the Ground Lease Estate.

84.     As of the date of this Complaint, the unpaid principal component of the Indebtedness secured by the Mortgage is $74,000,000.00 with proper per diem default interest accruing at the Prime Rate, plus two percent, as set forth in **Exhibit Q**.  Defendants have, may have, or have some lien or interest on the Mortgaged Property, which interest or lien, if any, is subsequent and/or subordinate to the Mortgage.

85.     No entities other than Fannie Mae have or may claim to have any interest in or lien on the Mortgaged Property superior to Fannie Mae's lien on the Mortgaged Property.

86.     To protect the security, including the Ground Lease Estate, afforded by the Note and Mortgage, Fannie Mae has incurred unreimbursed attorney fees and unreimbursed fees for its façade engineering consultant from the dates of incurrence until paid pursuant to Section 12(b) of the Mortgage and Section 4 of the Reimbursement Agreement) and those, pursuant to Section 12(a) of the Mortgage, will be added to the principal component of the Indebtedness secured by the Mortgage.[24]

---

[23] Fannie Mae does not agree to or concede the validity of any Lienor Defendant's mechanic lien against the Property but rather has included the Lienor Defendants as defendants herein consistent with its Title Search.

[24] Fannie Mae will provide a summary of such unreimbursed attorney fees and other unreimbursed fees upon request by the Court.

87.     The Property described herein is or may be subject to any state of facts an accurate survey may show, and to covenants, restrictions, easements, rights and reservations of record, if any, unpaid taxes, if any, and to any and all restrictions imposed by ordinances and/or zoning requirements of local municipal authorities, and any violations of the aforesaid, and to the physical conditions of the building on the Property as of the date of sale hereunder.

88.     Fannie Mae requests that in the event this action proceeds to judgment of foreclosure against the Ground Lease Estate, the Ground Lease Estate be sold, subject to any state of facts an accurate survey may show, and to covenants, restrictions, easements, rights and reservations of record, if any, unpaid taxes or assessed health or housing violations, if any, and to restrictions or requirements imposed by local municipal authorities and violations thereof.

89.     Fannie Mae shall not be deemed to have waived, altered, released, or changed the election hereinbefore made, by reason of the receipt of any payment after the date of the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, including, but not limited to, reasonable attorney's fees, and any and all further defaults under the Note and Mortgage accruing prior to the discontinuance of this action, are fully paid.

90.     Fannie Mae has no adequate remedy at law.

91.     For the reasons set forth above, Borrower has defaulted under the Borrower Documents, and Fannie Mae is entitled to foreclose the Mortgage against the Ground Lease Estate, and to the costs, including attorney's fees, for enforcing its rights under the Mortgage.

## <u>COUNT II</u>

### *(Against Borrower and Moinian for Foreclosure – UCC or Collateral Property)*

92.     Fannie Mae repeats and realleges each and every allegation contained in Paragraphs

1 through 89 of the Complaint as if set forth herein at length.

93.     As additional security for repayment of the Loan and performance of its obligations, Borrower, in the Mortgage, granted to Fannie Mae a security interest in, among other things, all of Borrower's "UCC Collateral" as defined in the Mortgage.

94.     Fannie Mae filed a UCC-1 financing statement as a fixture filing covering the UCC Collateral on May 11, 2005, with the Office of the City Register or The City of New York as CRN 20050000273236.   This financing statement was filed in connection with a public finance transaction with an effective life of 30 years. Fannie Mae also filed four UCC-1 financing statements covering the UCC Collateral with the New York Secretary of State's Office.  These filings were File Nos.  2005021100214911, 200502100215052 and 200502100215090, each filed on February 10, 2005, and File No. 20080904611124, filed on September 4, 2008.  File No. 200502100215052 was filed in connection with a public finance transaction with an effective life of 30 years. The other three financing statements have been continued by filed continuation statements.

95.     The Mortgage provides that from and after an Event of Default, Fannie Mae shall have the remedies of a secured party under the UCC, in addition to all remedies provided in the Mortgage.

96.     Fannie Mae is now entitled to take possession of the UCC Collateral and to receive the proceeds from their sale toward satisfaction of Borrower's indebtedness, or to have the UCC Collateral and the fixtures deemed part of the Borrower's Property upon foreclosure and sale thereof, without waiver of any of Fannie Mae's other rights and remedies.

97.     For the reasons set forth above, Fannie Mae is entitled to take possession of the UCC Collateral and to receive the proceeds from their sale toward satisfaction of Borrower's indebtedness, or to have the UCC Collateral deemed part of the Ground Lease Estate upon foreclosure and sale

thereof, without waiver of any of Fannie Mae's other rights and remedies, and to the costs, including attorney's fees, for enforcing its rights under the Borrower Documents.

## COUNT III

### (Against Borrower and Moinian for Payment of Rents)

98.     Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 97 of the Complaint as if set forth herein at length.

99.     Due to Borrower's defaults, the Loan is not amenable to payments as it has been accelerated and Fannie Mae has not waived any of the Events of Default described herein and in the Default and Acceleration Letter.  As a result, Fannie Mae is entitled under the Borrower Documents to the payment of Rents and other costs from the Property.

100.     By letter dated December 23, 2024, ArentFox Schiff notified Borrower, citing, *inter alia,* the Default and Acceleration Letter's termination of Borrower's right to collect rents and requirement that until further notice, any rents received by Borrower be held in trust for Fannie Mae and applied to bona fide current operating expenses to third parties, with excess paid to Fannie Mae.

101.     Fannie Mae directed Borrower to provide a monthly accounting of all rents received and bona fide operating expenses to third parties, with the remainder be remitted to the Servicer. To date, Borrower has failed to provide the monthly accounting and remittance.

102.     For the reasons set forth above, Fannie Mae is entitled to the payment of all Rents not otherwise applied to verified, bona fide operating expenses to third parties since delivery of Default and Acceleration Letter, and to the costs, including attorney's fees, for enforcing its rights under the Mortgage.

**COUNT IV**

***(Against Borrower for Appointment of Receiver)***

103.    Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 102 of the Complaint as if set forth herein at length.

104.    Due to Borrower's default, under the Borrower Documents, including Section 3(d) of the Mortgage, Fannie Mae is entitled to have the Court appoint a receiver to: (i) enter upon and take and maintain full control of the Property; (ii) remedy the defaults that are capable of being remedied described in the Tenant Default Notice; (iii) perform all acts that Fannie Mae in its discretion determines to be necessary or desirable for the operation and maintenance of the Property; and (iv) collect all Rents.

**105.**    For the reasons set forth above, Fannie Mae is entitled to the appointment of a receiver, and to the costs, including attorney's fees, for enforcing its rights under the Borrower Documents.[25]

**COUNT V**

***(Against Moinian and the Borrower for Deficiency Judgment)***

106.    Fannie Mae repeats and realleges each and every allegation contained in Paragraphs 1 through 105 of the Complaint as if set forth herein at length.

107.    As set forth above, Fannie Mae seeks to foreclose upon the Mortgage and recover the Indebtedness, together with any other amounts to be added pursuant to the terms of the Reimbursement Agreement and Loan Documents, including costs and attorneys' fees.

108.    This is a cause of action to obtain a deficiency judgment against Moinian and

---

[25] On March 21, 2025, the Court appointed a receiver pursuant to Fannie Mae's Application to Appoint a Receiver. *See* ECF No. 47.

Borrower for any deficiency that may remain unsatisfied after sale at foreclosure of the Property.

109.    Borrower and Moinian have failed to comply with the terms and provisions of the Reimbursement Agreement and Loan Documents. As a result of such failure, Moinian may be personally liable for all or a portion of the obligations under the Reimbursement Agreement and Loan Documents.

110.    For the reasons set forth above, Fannie Mae is entitled to a judgment awarding Fannie Mae a deficiency judgment against Moinian and Borrower for the whole deficiency remaining unsatisfied after the sale at foreclosure of the Property pursuant to Section 10(c) of the Note, or for the portion of the debt remaining unsatisfied after the sale of the Property and the application of the proceeds pursuant to the provisions contained in such judgment equal to the loss or damage suffered by Fannie Mae as a result of Borrower's failure to comply with Section 10(b) of the Note, the amount thereof to be determined by the Court as provided in Section 1371 of the New York Real Property Actions and Proceedings Law ("RPAPL"). Fannie Mae is also entitled to accrued and unpaid interest on such amount, reasonable costs and expenses incurred by Fannie Mae in collecting such amounts, and reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Fannie Mae requests this Court grant judgment as follows:

(a)    Appointing a receiver to take possession of the Ground Lease Estate and Property that are the subject of this foreclosure action, operate and manage the Property, and collect Rent;

(b)    Fixing the amount due on the Mortgage of Fannie Mae;

(c)    Awarding Fannie Mae possession of the UCC Collateral and the proceeds from their sale toward satisfaction of Borrower's indebtedness, or deeming the Collateral Property part of the Ground Lease Estate upon foreclosure and sale thereof;

(d)    Directing Fannie Mae be paid the amount due on the Mortgage, with interest, advances and costs;

(e)    Adjudging the Ground Lease Estate be sold according to law to satisfy the amount

due Fannie Mae;

(f)    Foreclosing and barring the Defendants, and each of them, of all equity of redemption in Ground Lease Estate as shall be sold;

(g)    Awarding Fannie Mae the costs and disbursements, including its reasonable attorney's fees, for enforcing its rights under the Mortgage, bringing this action, and collecting any judgment issued by the Court;

(h)    Awarding Fannie Mae a deficiency judgment against Moinian and the Borrower; and

(i)    Awarding Fannie Mae such other and further relief as the Court may deem just and appropriate.


Dated: New York, New York
        April 9, 2025

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Jackson D. Toof*
Richard J. Krainin, Esq.
Jackson D. Toof, Esq.
Shayshari Potter, Esq.
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
Tel: (212) 484-3918
Fax: (212) 484-3990
richard.krainin@afslaw.com
jackson.toof@afslaw.com
shayshari.potter@afslaw.com

*Attorneys for Plaintiff Federal National Mortgage Association*

## VERIFICATION

STATE OF TEXAS          )
                        ) ss:
COUNTY OF COLLIN        )

I, Joel Shaddox, am the Multifamily Senior Manager at the Federal National Mortgage Association ("Fannie Mae"). I have read the foregoing First Amended Verified Complaint and am familiar with its contents. I verify under penalty of perjury that all of the factual statements contained in the foregoing First Amended Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters I verify that they are true and correct to the best of my knowledge and belief.

_____
Joel Shaddox
Senior Manager, Special Asset Management
Credit Risk Management
Fannie Mae - Multifamily

Sworn to before me this
_____ Day of April, 2025

_____
Notary Public

LINDA HENDERSON
My Notary ID # 1511536
Expires April 19, 2028