UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

FEDERAL NATIONAL MORTGAGE ASSOCIATION,    :

                Plaintiff,    :

    -v-    :

JDM WASHINGTON STREET LLC ET AL.,    :

              Defendants.    :

-------------------------------------------------------------------X

25-cv-1728 (LJL)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/06/2026

LEWIS J. LIMAN, United States District Judge:

Non-party The Klein Law Group CRE, PLLC ("KLG") moves the Court for an order partially lifting the stay imposed by paragraph 9 of the Receivership Order entered by the Court on March 21, 2025, to permit it to proceed with a state court action against Defendant JDM Washington Street LLC ("JDM") and the Receiver, Trigild. Dkt. No. 117. For the following reasons, the motion is granted.

## BACKGROUND

Familiarity with the prior proceedings in this matter is presumed.

JDM is the tenant of property located at 90 Washington Street, New York, New York. Dkt. No. 1 ¶ 1. It holds that interest pursuant to a ground lease estate which secures a mortgage issued to the Federal National Mortgage Association ("Fannie Mae") to secure JDM's obligations to Fannie Mae. On February 28, 2025, Fannie Mae brought this action against JDM and others seeking, *inter alia*, foreclosure of the mortgage against the ground lease estate and appointment of a receiver. Dkt. No. 1. The Court appointed a receiver by order on March 21, 2025. Dkt. No. 47 (the "Order"). The Order appointed Trigild as receiver to take physical custody and possession of the Receivership Estate, defined to include "all tangible and intangible

assets" of JDM.  Dkt. No. 47 ¶¶ 1, 3.  Paragraph 9 of the Order restrains "All Parties and persons acting through them" from commencing "any judicial, administrative, or other proceeding against the Receiver . . . or the Receivership Estate" or from taking "[a]ny act to obtain possession of property of the Receivership Estate or to exercise control over property of the Receivership Estate."  *Id.* ¶ 9.

KLG provided legal services to JDM Washington over the course of two years in connection with legal matters concerning the building at 90 Washington Street, the lease of which was JDM's primary asset.  Dkt. No. 117-1 ¶ 5 (the "Fischer Decl.").  Those legal services were provided pursuant to professional services agreement for JDM to pay KLG a fee, of which JDM is in breach.  *Id.* ¶ 6; *see* Dkt. No. 117-2 (legal invoice from KLG to JDM).  The unpaid legal fees total $308,518.33, not including an additional $12,517.40 in "courtesy discounts." Fischer Decl. ¶ 10.  KLG accordingly seeks to commence a breach of contract action in state court to collect on the unpaid fees, plus interest and collection costs.  *Id.*  Although they engaged in settlement discussions, the Receiver opined that this Court had stayed KLG's ability to collect its fees.  *Id.* ¶ 13.

### PROCEDURAL HISTORY

On November 19, 2025, KLG submitted a motion for relief from, and partial lifting of, the stay entered by this Court in the Order.  Dkt. No. 117.  In its motion, it requests that the Court (1) partially lift the stay to permit KLG to proceed with the commencement of a state court action against JDM in the New York County Supreme Court, and (2) permit KLG to name the Receiver, in its capacity as a court-appointed representative of JDM in that action.  *Id.* at 13. Trigild submitted a memorandum of law in opposition on January 14, 2026, Dkt. No. 131, to which KLG replied on February 1, 2026, Dkt. No. 133.

**DISCUSSION[1]**

The parties agree that the test for whether the stay in this case should be lifted to permit prosecution of a state court action against the Receivership estate involves consideration of the three-prong test derived from the Ninth Circuit case *SEC v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980). The court must consider: "(1) whether refusing to lift the stay would maintain the status quo or whether the moving party would suffer substantial injury if not granted relief; (2) the point during the receivership at which the motion for relief from the stay is made; and (3) the merits of the moving party's underlying claim." *Wells Fargo Bank v. Acropolis Gardens Realty Corp.*, 2019 WL 3293463, at *3 (E.D.N.Y. June 26, 2019); *see also SEC v. Byers*, 592 F. Supp. 2d 532, 536 (S.D.N.Y. 2008), *aff'd*, 609 F.3d 87 (2d Cir. 2010); *KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, 2020 WL 1157650, at *3 (N.D.N.Y. March 10, 2020); *SEC v. Callahan*, 2 F. Supp. 3d 427, 436–37 (E.D.N.Y. 2014); *United States v. JHW Greentree Cap., L.P.*, 2014 WL 2608516, at *4 (D. Conn. June 11, 2014). Ultimately, these factors require the Court to answer the question of whether the stay is "necessary to achieve the purposes of the receivership." *Wencke*, 752 F.2d at 1370. The Court concludes that the partial lifting of the stay requested by KLG would not undermine the receivership or interfere with the operations of the

---

[1] KLG asserts that it has brought the present action "in an exercise of caution," as the Receivership Order "only restraints 'Parties and persons acting through them,' and KLG is not a party to, nor acting on behalf of a party to, this action. Fischer Decl. ¶ 3. It is within the Court's power to stay a non-party to a receivership as a part of its inherent power as a court of equity to fashion effective relief. *SEC v. Wencke*, 622 F. 2d 1363, 1369 (9th Cir. 1980); *see SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010). "An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership." *Byers*, 609 F.3d at 92. KLG has a point that the Receivership Order here does not contemplate a litigation stay against non-parties. However, considering both that the Court could modify its prior order to do so, and that KLG has submitted the present motion, the Court will evaluate the merits of the motion. *See United States v. JHW Greentree Capital, LP*, 2014 WL 2608516, at *3 (D. Conn. June 11, 2014) (holding that "even if" the receivership did not include the asset at issue, the moving party "has met the standard for lifting the litigation stay.")

Receiver.

The first factor, whether refusing to lift the stay would maintain the status quo or whether the moving party would suffer substantial injury if not granted relief, requires the Court to consider the competing interests of the receiver in maintaining the status quo and the moving party in obtaining relief. *Wencke*, 622 F.2d at 1373; *KeyBank*, 2020 WL 1157650 at *3 ("The first factor 'essentially balances the interests in preserving the receivership estate' against the interests of the movant" (quoting *SEC v. Stanford Int'l Bank Ltd*, 424 F. App'x 338, 341 (5th Cir. 2011))). KLG has a substantial interest in reducing to judgment the over a quarter of a million dollars it is owed from JDM for services it performed. It represents that it "is a small law firm with no sister companies which serve similar functions" and that it "desperately needs these funds to continue to operate." Dkt. No. 133 at 5; *see also* Dkt. No. 117 at 6. On the other hand, there is no reason to believe that "[d]iverting the receiver's time and resources" to address KLG's claim "would put the receivership property, and the . . . creditors the receivership was engaged to protect, at risk." *KeyBank*, 2020 WL 1157650 at *5. The Receiver asserts that it "has been working diligently to restore the Property to good condition and cure JDM's numerous defaults under the Ground Lease," which "is critical to the achieving the aims of the receivership," and that "the stay is necessary to ensure that the Receiver can focus on . . . protecting the Ground Lease, rather than investigating and defending against one party's claim." Dkt. No. 131 at 1, 8. But the Receiver does not identify how answering and defending against KLG's proposed lawsuit would interfere with its work in repairing the Building and addressing the Building's unsafe facade and the like. Dkt. No. 131 at 1. The Receiver has acknowledged that it has retained outside counsel to litigate 14 separate state court actions, including a similar claim by another law firm against JDM for unpaid legal fees. Dkt. No. 109 ¶¶ 75–79. There is no reason

4

to believe that this action would take any time away from the Receiver that is necessary for it to administer the receivership estate, or that it would siphon such a percentage of available funds such that it could no longer continue its work.

It is particularly clear here that the Receiver would suffer no substantial injury because KLG's claim that it seeks to litigate in state court is relatively simple.  The representations on which KLG was not paid include a Yellowstone action "to enjoin termination of the Ground Lease and a dispute with adjacent property owners."  Dkt. No. 131 at 4–5.  It sent invoices to JDM, which the latter received and acknowledged, and those invoices have not been paid.  The debt has been acknowledged in the Receiver's status reports to this Court.  *See* Fischer Decl. ¶ 9. This stands in contrast to other cases in which courts have declined to grant relief from a stay. For example, in *KeyBank*, the court found that the first *Wencke* factor weighed against the party seeking to lift a Securities and Exchange Commission receivership stay to litigate a breach of contract claim because (1) the contract at issue contained a limitation of liability clause limiting damages to a few thousand dollars, and (2) given the "ponderously complex" case, the receiver did not have the "time and resources to attempt to fend off" the claim.  2020 WL 1157650 at *5. Here, by contrast, the state court action is worth a significant amount of money, and is a straightforward contract claim between two parties.  Moreover, the underlying foreclosure action involves just one lease and one borrower (and that lease is managed by a managing agent).  In *Wells Fargo Bank*, the court determined that the first factor did not favor the movant because they were "free to seek relief" from other parties.  2019 WL 3293463, at *3.  As the sole counterparty to the contract in breach, JDM is the only entity from which KLG can seek relief here.

The second *Wencke* factor turns upon whether the Receiver has had a sufficient amount of time to identify and inventory JDM's debts and liabilities and to gain a workable understanding of its current state of affairs.  The present motion was filed eight months after the Receiver was appointed.  The Receiver asserts that "it was not until relatively recently that the Receiver could move on" from its preliminary measures of transitioning from JDM's affiliate and obtaining JDM's books and records.  Dkt. No. 131 at 10.  It points to cases holding that periods of time even exceeding a year may be too short for a receiver to identify and inventory its debts and liabilities.  *Id.* at 9.

There is no bright line rule based on the calendar for when an action against a receiver may proceed.  "[T]he inquiry is fact-specific and 'based on the number of entities, the complexity of the scheme, and any number of other factors.'"  *KeyBank*, 2020 WL 1157650, at *3 (quoting *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341); *accord Greentree Cap.*, 2014 WL 2608516, at *7.  Whether a receiver has had sufficient time depends on whether it still has the "need to organize and understand the entities under his control."  *Wencke*, 622 F.2d at 1374.  Here, even if it is only relatively recently that the Receiver has been able to obtain JDM's books and records, there is no reason to believe that the Receiver has not been able to obtain an understanding of its current state of affairs.

This case is not, like *KeyBank*, "ponderously complex, involving dozens of defendant entities."  2020 WL 1157650, at *5; *see also Callahan*, 2 F. Supp. 3d at 440 (noting that a year and five months was not sufficient "[g]iven the complicated nature of this case, which includes the alleged comingling of $90 million of investor funds and extensive international discovery."); *Stanford Int'l Bank*, 424 F. App'x at 341–42 (timing cut against lifting stay where stay was in place for one year but the underlying Ponzi scheme was "complex and intricate, involving many

entities and billions of dollars.").  Nor is the property at issue here, as in *KeyBank*, "immense and complicated."  *Id.*  In fact, it is relatively simple, and it does not appear that litigating the simple contract matter would "disrupt the receiver's duty to organize and understand its assets." *Greentree Cap.*, 2014 WL 2608516, at *7.  The Receiver was appointed on March 21, 2025, to manage a single property.  Dkt. No. 47.  It has rendered ten status reports to the Court.  Dkt. Nos. 67, 73, 79, 83, 85, 86, 94, 122, 130, 132.  It was able to engage in numerous conversations with counsel for KLG, beginning in September 2025.  *See* Fischer Decl. ¶ 11.  Although undoubtably there remains work to be done to cure the ground lease, Trigild has not represented that it remains unaware of what that work is or is unaware of the scope and scale of the task before it. The second factor cuts in favor of KLG as well.

The third *Wencke* factor considers the merits of the moving party's underlying claim.  "A district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay."  *KeyBank*, 2020 WL 1157650, at *4 (quoting *United States v. Acord Tech. Fund, L.P.*, 429 F.3d 438, 449 (3d Cir. 2005)); *Greentree Cap.*, 2014 WL 2608516, at *9 (same).  "Where the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution."  *Wencke*, 622 F.2d at 1373.  KLG's claim is far more than colorable.  It has offered evidence that is undisputed on this record that it performed extensive legal services for JDM in the amount of $308,518.33 pursuant to the retainer agreement it enjoyed with JDM, Fischer Decl. ¶¶ 7, 8, 10; that the retainer agreement obligated JDM to pay KLG for the legal services it performed on JDM's behalf, *id.* ¶ 7; that it invoiced JDM for those services, *id.* ¶¶ 9– 10; that JDM did not object to the quality or competency of the legal services after receiving the itemized invoices, *id.* ¶ 9; and that JDM did not pay the sums due and owing in violation of the

engagement agreement, *id.* ¶ 10. KLG has submitted the invoices to the Court along with a declaration establishing that they were sent to JDM and received without objection. *Id.* ¶ 9; Dkt. No. 117-2. Indeed, as noted, the Receiver's own Status Report acknowledges the debt as one of its "Aged Payables," in the amount of $308,518.33. Fischer Decl. ¶ 9, Dkt. No. 85 at 31.

Under these circumstances, it would appear that KLG has good claims in breach of contract, quantum meruit, and account stated. *See Ascoli v. Lynch*, 769 N.Y.S.2d 567, 568 (2d Dep't. 2003) (nonpayment of payments due "was sufficient to show" that the defendant "breached its contractual obligations . . . and that plaintiff was damaged thereby."); *Wistron Neweb Corp. v. Genesis Networks Telecom Servs.*, 2022 WL 17067984, at *16 (S.D.N.Y. Nov. 17, 2022) ("a plaintiff can establish a claim for account stated by showing '(1) an account was presented; (2) it was accepted as correct; and (3) Defendant promised to pay the amount stated.'" (quoting *Fed. Corp. v. Future Tire Co., Ltd.*, 2021 WL 2550472, at *3 (E.D.N.Y. June 22, 2021))); *Athayde v. Dogpound Fitness, Inc.*, 2024 WL 3876181, at *4 (S.D.N.Y. Aug. 20, 2024) ("To establish quantum meruit, a plaintiff must show '(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of services.'" (quoting *Farina v. Bastianich*, 984 N.Y.S.2d 46, 49 (1st Dep't 2014)). The Receiver notes that KLG has not attached the retainer agreement to its motion papers, but it cites no authority for the proposition that such evidence is required when the only issue before the Court is whether to permit a partial lifting of the stay so KLG can pursue its claim.[2]

---

[2] The receiver relies upon the district court decision in *United States v. Elk Assocs. Funding Corp.*, 2020 WL 6581948 (E.D.N.Y. Nov. 10, 2020), but that case is inapposite. In it, former directors and officers of a company who were subject to a Small Business Administration ("SBA") receivership and who were defendants in an action brought by the receiver sought an order lifting the stay against litigation to sue the SBA to enforce a prior settlement agreement.

Finally, KLG seeks leave of the court to sue the Receiver in its capacity as the representative of JDM Washington as a party in the action. "Leave of the court must be obtained to sue a receiver in his or her representative, as opposed to individual, capacity." *Shwartz v. Kurlander*, 719 N.Y.S.2d 105, 106 (2d Dep't 2001). "This is based on a concern for the protection of the assets in receivership, from which any judgment obtained against a receiver in his or her representative capacity would be paid." *Id.* Trigild argues that the Court should deny this request, because the Receivership Order states that "the Receiver shall not be liable for any claims of any nature whatsoever of such employee, agent, or other person that arose prior to the date and time of the entry of this Order." Dkt. No. 47 at 25. It is, of course, within the power of the Court to modify the Order. The Receiver is presently, per order of the Court, in control of JDM's property, such that there is no effective relief for KLG absent the ability to name the Receiver in its representative capacity in the state court action. "A suit against a receiver may be for the purpose of asserting a claim against funds in the receiver's possession by reason of some . . . act or omission of the original defendant." Ralph E. Clark, A Treatise on the Law and Practice of Receivers § 549 (3d ed. 1992). And after the appointment of a receiver "such a receiver although an officer of the court, acts for the creditor whose debts have thus been fastened upon the property in the receiver's hands," such that upon the "authority of the appointing court," creditors may sue to "enforce their rights as against the property in possession of the receiver." *Id.* § 618.

---

*Id.* at *2. The court declined to lift the stay because: (1) the only harm movants identified from not lifting the stay was that they would have to incur defense costs in the receiver suit against them; (2) movants sought to enjoin the lawsuit against them which would "undoubtedly affec[t] the Receiver's ability to marshal and liquidate Elk's assets, including the assets at issue in the Receiver Action," *id.* at *10, and the court had previously determined that the movants' proposed lawsuit was without merit, *id.* at *14.

9

**CONCLUSION**

The motion for a partial lift of the stay in this Court's Receivership Order is GRANTED. KLG is permitted to proceed with its commencement of a state court action against JDM, and to name the Receiver Trigild in its representative capacity.  KLG is required to seek further leave of Court to enforce any judgment obtained in that action.

The Clerk of Court is respectfully directed to close Dkt. No. 117.


SO ORDERED.

Dated: February 2, 2026
       New York, New York

_____
              LEWIS J. LIMAN
          United States District Judge